May it please the Court, I am Joshua Glellen, appearing on behalf of Mr. Dana Roberts. In a state of coward against Nicholas Drilling Company, the Fifth Circuit en banc and the Supreme Court held that the phrase, Person entitled to compensation, in Section 33G of the Longshore Act, could not be read to mean person who has been awarded or is receiving compensation. That had been the longstanding administrative construction, but the Fifth Circuit and the Supreme Court agreed that it simply would not bear that reading. In the present case, we have a different statutory provision which uses the very formulations that were rejected as a reading of person entitled to compensation in Section 33G, and yet the board and the director take those formulations in Section 6C to mean the very thing that Section 33G does make the determinative factor, whether the person was entitled to compensation at a given time. Well, let's take it step by step. What about the temporary total? Why shouldn't the benefits be calculated as to the year, which would be 2002, in which the Petitioner was disabled? Why shouldn't the term, at time of injury, control? Because the time of injury is not there. That is, the phrase time of injury is in Section 10 for the determination of the average weekly wage. There's no question about that. We're only talking now about the maximum and minimum rate provision, and it makes no reference to the time of the injury or the time disability began. Instead, it refers explicitly in terms that the Fifth Circuit, since then, in the Wilkerson decision, has found to be plain and unambiguous, that is, newly awarded compensation during the fiscal year in question. Mr. Roberts was not awarded compensation, newly or otherwise, until the ALJ's decision in fiscal year 2007. Well, the trouble I have with your award argument is that it's rather arbitrary. An award could be given, let's say, six months to a year after the injury, or it may take 10 years, which is the case in one of these other cases. How can the date of award logically apply here? That's a question, Your Honor, which we have to address to Congress. We don't. Neither we nor the director gets to make this up. The statute says newly awarded compensation during such period. Now, we don't get to judge whether that makes sense, except, of course, we get to say, Congress could not conceivably have intended the consequences of that, and I think the director has failed utterly to make any case for that. It is a rational determinant. As I think our reply brief explains, the cases that are subject to the maximum and by withholding compensation. Well, now, there are three categories. There's temporary total, which was from 2002 until September 30, 05, and then there was the permanent total from July 12 to September 30, 05, and then there was permanent partial from October 10, I guess, 05 on. Actually, I think, Judge Scanlon, you left out the first nine days of October, which were still continued permanent total. Correct. You are correct. To which of these three categories does your newly awarded argument apply? All three or not? It applies to all three, yes. The one thing that Section 6C carves out for different treatment is permanent total disability and death benefits, and because those are subject to annual adjustments after they've begun under Section 10F of the Act, those benefits do continue to grow thereafter, and so Section 6C says for those cases, it's not just when they were newly awarded, but also whether you're currently receiving benefits for permanent total or death during the fiscal year. As I read the LHWCA, it specifies the time of injury as appropriate time frame for other calculations relating to compensation. For instance, it states that the average weekly wage starting point for compensation is calculated at the date of injury. It suggests that the injured employee's residual earning capacity is also calculated at the time of injury, and then there are other sections, of course, which also suggest that this is the time of injury. Then when I read the structure of the statute, if you will, as a whole, I'm trying to figure out whether I can really go there, because I'm going to try to interpret this statute as it is. 933, for instance, explicitly contemplates the award is not always limited to the formal compensation order. It says for the purposes of this subsection, the award with respect to the compensation order means a formal order issued by the deputy commissioner. Now, if I read the statute as a whole, it seems to me that we wouldn't really need 933 to implicitly suggest that for the purposes of that subsection, it should be read as you want me to read section 6, if in fact section 6 wasn't to suggest also that it was the time of injury. Let me first, Judge Smith, address that final sentence of section 33B, which you've read. That was enacted in 1984, and in fact, before that was enacted, the same year, the Supreme Court decided a case called Palace Shipping Agency v. Duras, which held even before that sentence was added to section 33B, that's what award means in the Longshore Act. So this sentence is surplusage. I mean, we don't have to read the statute to give effect to that sentence, because the Supreme Court had already held before it was enacted that that was the case without the sentence being enacted. The problem comes, and I guess this is the principle that I'm worried about, when I look all through the statute or the Act to determine what the term award or awarded means, I have to determine what it is, and there is no definitional section. So I have to look at the statute as a whole in order to determine these situations. If I look at 908C22, it doesn't seem to me that that has anything to do with the award at the time it's officially awarded by a court or anybody else. I mean, if I look at 914A, the award means a formal award, but also indicating that the entitlement to compensation, just not a formal compensation order. So I guess what I'm really trying to do is trying to read this statute and try to figure out what — whether you're trying to interpret this for other than it is. Well, I have to first ask what you mean in section 8. I don't think there's anything in section — anywhere in section 8 that suggests that award is just receiving compensation or entitlement to compensation. That is absolutely not there, and that's just the equation that the Supreme Court rejected in a state of coward. The only time there's an award, the only kind of award provided for under the statute, and what the Supreme Court held in Palace Shipping Agency an award means is a compensation order making an award. That's — at that point, it's enforceable. Short of that, the employer may be making voluntary payments, but they can cut them off any time they want. The statute contemplates that if there's no dispute about the claimant's entitlement from the outset, a compensation order is entered as a matter of course. Now, the Office of Workers' Compensation Programs does not administer it that way currently, but the employer has a right to insist on, just as the claimant has a right to insist on, OWCP performing the statutory duty set forth in section 19C of the Act of entering an award where the claimant's entitlement, continuing entitlement is acknowledged. Thank you, counsel. Your time has expired. Thank you very much. We'll hear from the Director. Good morning. May it please the Court. Matthew Boyle for the Director of OWCP. Your Honors. Mr. Boyle, I see also Mr. Frank Hug listed as an oralist. Yes, Your Honor. Are you going to be sharing time? Yes, Your Honor. I'm going to go for six minutes. All right. You have a total of ten minutes between the two of you. You know that. All right. Go ahead. Proceed. Your Honor, when you asked Mr. Gleiland about whether the date of injury or disability controls, his answer was, we're only talking about the maximum and minimum statutory provision. But this Court has said that when it interprets a statute, it doesn't read the individual words or sections in isolation. It reads them in the context of the overall statutory scheme. And that's what the Director's construction, which this Court has held is entitled to deference, does. It reads section 6 as one part of the compensation scheme, and it tries to interpret that part in light and consistently with the rest of the compensation scheme. In doing so, it avoids the absurd results that come with Mr. Roberts' interpretation. Under the rest of the compensation scheme, a worker's compensation rate is always tied to the date he becomes disabled and is never in any other situation by any other provision of the Act tied to the date an ALJ issues an order. The reason for that is statutory. The reason for tying disability to the date of disability to the compensation rate is statutory. Under the Act, an injured worker is compensated for disability. Disability is defined in section 2, subsection 10, as a loss of wage earning capacity, specifically the worker's inability to earn the same wage as he was earning prior to the injury. That loss of wage earning capacity begins, by definition, on the day the employee becomes disabled. That is why compensation is allowed under section 6A from the date of the disability. It's why the employee's compensation rate is based on the wages he was earning in the year leading up to his disability. And it's why tying the worker's compensation rate to the date of an ALJ's order doesn't make any sense in this context. Is there anywhere that the Act refers to the word award and means something other than the ALJ's order? It's not, Your Honor. And our interpretation of the statute doesn't depend on what the meaning of award is. I think award can fairly be construed to mean compensation order. What we're saying is that the important question is for what period was compensation newly awarded, not in what period was compensation newly awarded. And what that does is maintain the tie between the worker's compensation rate and his date of disability that exists everywhere else in the compensation scheme, for example, in sections 10 and section 8 and section 2, subsection 10. The loss of wage earning capacity doesn't become worse for a worker. The loss of wage earning capacity is what he is compensated for. That loss of wage earning capacity doesn't increase or decrease based on when a compensation rate is issued. The loss of wage earning capacity begins by definition as of the date the worker becomes disabled and is properly measured as of the date the worker becomes disabled. There is no indication that Congress intended to dissolve the linkage between the worker's compensation rate and the date he became disabled simply because his average weekly wage was high enough to invoke section 6. In fact, you can't even get to section 6 until you first go through sections 10 and section 8, which is why section 6 has to be interpreted in light of those two other provisions. Section 10 provides that a worker's compensation rate is to be based on his average weekly wage at the time of the disabling injury. And section 8 says that where compensation is paid for total disability, the worker's compensation rate is two-thirds of his average weekly wage. So normally, when section 6 is involved, you look at the 52 weeks before the worker's injury. You get his average weekly wage. You multiply it by two-thirds. That's his compensation rate for total disability. Section 6 comes into play only if the worker's average weekly wage and its resulting calculated compensation rate under section 8 are either very high or very low. And in this case, Mr. Roberts, we're obviously very high. Section 6 then kicks in because Congress put a limit on how high a worker's compensation rate can be. The point of this, Your Honor, and I'm about to cede my time to Mr. Hugg, the point of this is you're comparing two-thirds of a worker's average weekly wage from the date of his disability to twice the national average weekly wage, the maximum rate, for the same year. If you're comparing it to some other year, it doesn't make any sense. There's no consistency there. You don't get a valid comparison. Thank you. Thank you, counsel. Good morning. May it please the Court, Frank B. Hugg, appearing for Respondent, Sealand Services and Kemper Insurance Company. If another gate clerk at Dutch Harbor, Alaska, slipped and fell on the same piece of ice in which Mr. Roberts fell and had a slightly different injury or different course of care, recuperation, whatever, such that the award issued at different dates, maybe earlier, maybe later, would it be appropriate for the amount of compensation received by such hypothetical workers, Robin's son or another one later, to receive different benefits than Mr. Roberts received? The answer is no. It would not be logical, nor would it be appropriate to allow the capricious date of the issuance of an award by a judge to determine the amount of compensation or the maximum rate. There's no ‑‑ it makes no sense, and the interpretation of any statute should be in accordance with the avoidance of absurd results. There can be no other explanation for squeezing this interpretation that the Petitioner seeks except for the peculiar facts of the delay that occurred. And the Wilkins ‑‑ that's our primary concern from the industry side of the picture. The second thing is how did this get to be the ‑‑ the point I wish to make is how did this get to be the way it is? Well, it started off for a noble purpose to eliminate in 72, some of us remember when this happened, to eliminate the fixed maximum. And the 72 amendments then put in the phase‑in language starting from 125, 151, until we get to the current humanitarian 200 percent of the national average weekly wage. That phase‑in language became superfluous, so the 84 amendments were passed, and the language remained, as I put in the appendix, determinations under subsection B3. The only construction of that is, reasonable construction of the section in dispute, is that Congress intended for the progressive beneficent humanitarian benefits to apply to those already on permanent total disability, but the date of injury remains the same for determination of the compensation rate. In this instance, I think it's only logical that you avoid the absurd results and peg the compensation rate under the maximum to the date of injury, or as the director has ably argued in its brief, of the date the injury becomes disabling. Let me ask you a question. Do you believe this language is ambiguous? Yes. So if it's ambiguous, what is my standard review? Deference to the director. And under what doctrine? Under the doctrine, I don't know, I forgot the name. You think we owe the director Chevron deference? I do. And I must admit it's only the second time in 30 years I've said that. The first one being Rasmus. I guess I got the wrong guy. All I'm suggesting is there's Skidmore deference, there's Chevron deference, and I'm trying to determine if you're suggesting I owe either. If it's ambiguous, I've got to go someplace. I want you to afford it. Shall I give it to him rather than you? Yes. I want you to afford the highest level of deference possible to the director. He quit before I could ask him the question. Only on this case, and don't hold it to us next time. But the interest of the director and the industry on the West Coast, if not the entire country, are united on this. People in claims adjusters need to know how much to pay somebody. And if we go through this elaborate scheme that Petitioner would seek, there will be folks sitting there saying, well, now, wait a minute, which rate shall we use or which rate shall we use later on before the award issues? Pegging that, and trust me, those of us in the trenches know that the dates that awards come down have a huge variation that makes no sense, depends on wildly unpredictable factors. So. But that's really not our concern, is it, as a court? I mean, isn't that the Congress's necessity to deal with, not the court? I mean, isn't the court supposed to interpret the statute as it is, regardless of what might be the ultimate result if the poor Congress got it wrong? We're not supposed to interpret it as we would want it to be, favoring you or even the other side, are we? Well, I agree, but you've got some very confusing language that I think is superfluous that probably should have been tightened up. But if one is to do, if the court must do its statutory, which it will, do its statutory duty, then the word during can only mean for such period of disability as opposed to in, in the strict syntax of the use of English. I would agree with that. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: Whyte, O'scannlain, Smith M.